FILED BY _____ CG ___ D.C.

**Feb 24, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI, FL

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

21-2340-REID

United States of America
v.
DROR SVORAI

*Defendant*

)
)
)
)
)
)

Case No.    1:21MJ2054

## ARREST WARRANT

To:    Any authorized law enforcement officer

   **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    DROR SVORAI
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☑ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

   18 U.S.C. § 1028A (Aggravated Identity Theft)
   18 U.S.C. § 1343 (Wire Fraud)
   18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Date:    02/17/2021

City and state:    Cleveland, Ohio

*David A. Ruiz*
*Issuing officer's signature*

David A. Ruiz, Magistrate Judge
*Printed name and title*

| Return |
| --- |

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date:    _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of Ohio

**FILED**

6:50 pm Feb 17 2021

**Clerk U.S. District Court
Northern District of Ohio
Cleveland**

United States of America
v.

DROR SVORAI

*Defendant(s)*

)
)
)
)
)
)
)

Case No.    1:21MJ2054

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___October 2020 thru Feb 17, 2021___ in the county of ___Cuyahoga___ in the
___Northern___ District of ___Ohio, and elsewhere___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated herein by reference

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Anthony Fry, Special Agent
*Printed name and title*

Sworn to via telephone after submission by reliable
electronic means. Fed. R. Crim. P. 4.1 and 41(d)(3).

Date: ___Feb 17, 2021___

City and state: _____Cleveland, Ohio_____

_____
*Judge's signature*

David A. Ruiz, Magistrate Judge
*Printed name and title*

**AFFIDAVIT**                    1:21MJ2054

I, ANTHONY FRY, being duly sworn, deposes and says that I am a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1028A (Aggravated Identity Theft), 1343 (Wire Fraud), and 1349 (Conspiracy to Commit Wire Fraud) have been committed by DROR SVORAI, and others, known and unknown, in the Northern District of Ohio and elsewhere.

The source of you affiant's information and the grounds for his belief are as follows:

**INTRODUCTION**

1.      I have been a Special Agent with the FBI since September 2018.  I am currently assigned to an FBI squad which investigates securities fraud, wire fraud, and other financial crimes.  During my tenure with the FBI, I have participated in financial fraud investigations involving stock market manipulation and other illegal manipulative trading schemes.  I have participated in all aspects of investigations including executing search warrants, debriefing defendants, and informants, interviewing witnesses, and reviewing and analyzing recorded conversations.

2.      I have personally participated in the investigation of DROR SVORAI, among others, as discussed below.  I am familiar with the facts and circumstances of this investigation from, among other things: (a) my personal participation in this investigation, (b) discussions with other law enforcement agents and undercover law enforcement agents involved in this investigation, and (c) my review of consensual recordings, among other sources of evidence.

3.     Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents.  Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendants and seize the below-identified bank account, I have not set forth each and every fact learned during the course of the investigation.  Instead, I have set forth only those facts that I believe are necessary to establish probably cause for the arrest and seizure warrants sought herein.  In addition, where the contents of documents, or the actions, statements, and conversations of others are reported herein, they are reported in sum and substance in part, except where otherwise indicated.  Summaries of recorded conversations are based upon draft transcripts and summaries of these conversations which are subject to revision.

**PROBABLE CAUSE**

4.     DROR SVORAI's address listed with the Florida Department of Motor Vehicles ("DMV") is in Hollywood, Florida.

5.     On or about July 19, 2019, United States Magistrate Judge Thomas M. Parker issued a Criminal Complaint, Case No. 1:19-MJ-3191, charging SVORAI with violations of Title 18, United States Code, Sections 1343 (Wire Fraud), 1348 (Securities Fraud), and 1349 (Conspiracy to Commit Securities Fraud) in the Northern District of Ohio, Eastern Division, and elsewhere.

6.     The FBI arrested SVORAI on July 22, 2019 and he was placed on a $1 Million secured bond by United States Magistrate Judge Lauren Fleischer Louis in the Southern District of Florida, SDFL Case No. 1:19-MJ-3164.  At SVORAI's arraignment in the Northern District of Ohio, Magistrate Judge Parker ordered the same bond conditions that were imposed by the Court in the Southern District of Florida.

7.     On or about July 23, 2020, a Grand Jury in the Northern District of Ohio returned an indictment, Case No. 1:20-CR392, against SVORAI, and others, charging him with violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit Securities Fraud), 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire Fraud), and 1956(h) (Conspiracy to Launder Monetary Instruments) and Title 15, United States Code, Sections 78j(b), 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5 (Securities Fraud) for his participation in a scheme to execute a pump and dump securities fraud scheme involving the securities of PotNetwork Holdings, Inc., Vapor Group, Inc., CLIC Technology, Inc., White Label Liquid, Inc., Canna Corporation, and Grand Capital Ventures, Inc.'s securities.  His previous bond was continued.

8.     In and around October 2020, a confidential human source ("CHS")[1] informed the FBI that SVORAI was in the process of gaining control of yet another publicly traded shell company, 4Cable TV International, Inc. ("CATV") without proper disclosure.  This information predicated a new investigation of SVORAI relative to his activities with the stock CATV.

9.     CATV is a "microcap" or "penny" stock.  "Microcap" or "penny" stocks refer to stocks of publicly traded U.S. companies which have a low market capitalization.  Microcap stocks are often subject to price manipulation because they are thinly traded and subject to less regulatory scrutiny than stocks that are traded on notable exchanges.  Additionally, large blocks of microcap stock are often controlled by a small group of individuals, which enable those in the group to control or orchestrate manipulative trading in those stocks.  "Caveat Emptor

---

[1] CHS is an individual who was being investigated by the FBI regarding his participation in the securities fraud scheme involving Vapor Group, Inc., and Grand Capital Ventures, Inc., two manipulated stocks SVORAI was involved with.  When approached by agents, CHS agreed to cooperate.  CHS has been advised that they will be charged for their role in the prior scheme, and is cooperating in hopes that the United States will file a motion for downward departure under 18 U.S.C. § 3553 and/or § 5K1.1 of the Sentencing Guidelines.

Designation", commonly referred to as a "skull and crossbones" is assigned by OTC Markets

Group, Inc. ("OTC") to when OTC becomes aware of: (a) a stock promotion, (b) an investigation

of fraud or other criminal activities, (c) a suspension or halt from a regulatory authority or

exchange, (d) undisclosed corporate actions, or (e) other public interest concerns.

10.     Market manipulation schemes known as "pump and dump" schemes involved

creating a price for a security that was not reflective of true market value, allowing the

defendants holding large blocks of the inflated stock to sell shares they obtained for little or no

money at the inflated price. The purchasing party was left with a near-worthless security when

the price dropped to accurately reflect the stocks true value, or lack thereof, in the market.  There

were generally three phases to a pump and dump scheme: (a) first, obtaining and concealing

control of a significant portion of a publicly traded company's stock, (b) second, fraudulently

inflating or keeping inflated the price and trading volume of the company's stock through a

variety of means; and (c) third, once the price of the stock was fraudulently inflated, selling the

stock using the fraudulently inflated price as a benchmark, thereby profiting at the expense of the

investing public.

The Investigation and Fraudulent Scheme

11.     The crux of the fraudulent scheme is that SVORAI worked to obtain ownership of

large blocks of shares in CATV using nominees and co-conspirators to take control of the CATV

shell.  Concurrently, SVORAI and others worked to make CATV "current" because OTC

Markets marked CATV with a "STOP" sign, which warned potential investors about trading the

stock because CATV "may not be making material information [about the company] publicly

available."  Based on my experience, a penny stock with a STOP sign tends to trade less and

have depressed share prices compared to fully-reporting stocks without warning signals, and
investors are less likely to want to purchase these types of securities.

12.     As explained on OTC Markets website, "Buying or selling a security on the basis
of material nonpublic material information is prohibited under Section 10(b) of the Securities
Exchange Act of 1934 and Rules 10b-5 and 10b5-1 thereunder.  Violators may be subject to civil
and criminal penalties."

13.     According to OTC Markets, CATV has not reported material financial
information since at least on or about June 30, 2015:



14.     Upon information and belief and from the review of dozens of consensually recorded and monitored phone calls between CHS and SVORAI, I believe SVORAI planned to file documents to make the company "current" to enable him to deposit large blocks of shares into the market, increase the share price, and capitalize on recent trading in CATV.

15.     I believe potential harm to the market is significant.   For example, on February 10, 2021, over $2 million in CATV shares were traded on the open market.  If SVORAI succeeded in making CATV "current" and had the "STOP" sign removed, he could deposit approximately a significant number of shares into the market, which could potentially earn him millions of dollars.

16.     In and around December 2020, CHS recorded several consensually recorded conversations with SVORAI, wherein, SVORAI assumed the identity of another individual to speak with others regarding obtaining control of CATV through the purchase of outstanding CATV debt, which could be converted to CATV shares.

17.     On or about December 11, 2020, during a consensually monitored interstate telephone call, SVORAI told the CHS that SVORAI was going to pay the CHS $5,000 for CATV.  SVORAI stated he was owed $220,000 by another party.  SVORAI confirmed his balance for the purchase of the CATV shell was $12,500, followed by another payment of $20,000 in the future.  SVORAI stated the control block of CATV was going to be split 60% for the CEO and 40% for SVORAI's wife or another family member who lived in Canada.  CHS reported SVORAI also owed $75,000 for the purchase of convertible debt in CATV as well.

18.     On or about December 24, 2020, during a consensually monitored interstate telephone call with SVORAI, CHS and a CATV debt holder, SVORAI assumed the identity of another known person when speaking to the CATV debt holder.  The purpose of the call was for SVORAI's purchase of the CATV debt to consolidate SVORAI's control of CATV.

19.     On or about January 11, 2020, during a consensually monitored interstate telephone call, SVORAI and CHS discussed that the then current CEO of CATV was aware of SVORAI's undisclosed control of CATV.  SVORAI also commented on the $700,000 worth of recent trading in CATV.

20.     From in and around December 2020 and February 2021, CHS recorded several calls with SVORAI and another co-conspirator, wherein SVORAI assumed the identities of others and worked to consolidate control of CATV debt.  SVORAI discussed payments to the CHS for his work and remarked on the volume of CATV trading.  CHS reported that price and

volume for CATV kept increasing and CATV was making announcements and issuing press releases, which were affecting the stock price.

21.     On or about February 10, 2021, Individual-1[2], known to reside in Florida, e-mailed a government-controlled email account controlled by the FBI in the Northern District of Ohio, Eastern Division three falsely back-dated resignation letters in the names three former executives, officers, or affiliates of the company.  SVORAI was copied on the email using a false name RONIKO BALINI at email address info@easygrinder.com.  The three resignation letters were falsely backdated to make it appear that the individuals listed in the letters resigned on or about December 8, 2020.  Upon information and belief and from discussions with CHS, I believe the letters were backdated to make it appear that the individuals previously resigned around the time of an acquisition and appointment of a new CEO in CATV.

22.     On or about February 11, 2021, CHS reported a conversation with SVORAI regarding the corporate resignation letters.  SVORAI was informed that the individuals named in the letters would not sign the documents due to the documents being backdated.  SVORAI told the CHS to find someone in CHS' driveway to sign the back-dated documents.

23.     Upon information and belief, the three individuals listed on the documents are actual people who previously held or currently hold corporate positions in CATV.

24.     On or about the same date, during a consensually monitored interstate telephone call with SVORAI, the CHS told SVORAI that they found someone in their driveway to sign on

---

[2] Indiviudal-1 is a co-conspirator to the scheme who assisted SVORAI to with paperwork and accounting to prepare filings and other documents for CATV to further the scheme by, in part, bringing CATV "current" with OTC Markets.

behalf of the three individuals but required $100 per signature. SVORAI agreed to pay $100 per fraudulent signature.[3]

25.     On or about the same date, CHS recorded a second consensually monitored call with SVORAI. CHS returned a missed call from SVORAI after their second conversation regarding the $100 payment. During this third call, SVORAI asked if there was an issue with "the guy" who was signing the documents. CHS told SVORAI that "the guy" didn't care" and "did not know" and no one knew what the signatures looked like. SVORAI responded, "the truth is they [the individuals having their signature's forged] are not even there . . . they not signing a debt conversion." CHS told SVORAI that CHS told "the guy" to sign whatever he thinks it should look like and asked SVORAI if that would work. SVORAI confirmed it would.

26.     On February 11, 2021, the FBI, from the Northern District of Ohio, Eastern Division, emailed the signed falsified documents back to Individual-1, and SVORAI.

## CONCLUSION

WHEREFORE, based on the foregoing, your affiant respectfully requests that an arrest warrant be issued for the defendant DROR SVORAI so that they may be dealt with according to law.

Because public filing of this document could result in risk of flight by the defendant DROR SVORAI as well as jeopardize the government's ongoing investigation, your affiant respectfully requests that this affidavit, as well the arrest warrant issued in connection with this complaint, be filed under seal.

---

[3] There was no other individual and the CHS did not pay anyone for the signatures.

Anthony Fry, Special Agent
Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic
means.  Fed. R. Crim. P. 3, 4(d), and 4.1, on this 17th day of
February 2021.

David A. Ruiz
United States Magistrate Judge

**FILED**

6:50 pm Feb 17 2021

**Clerk U.S. District Court**
**Northern District of Ohio**
**Cleveland**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:21MJ2054 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| DROR SVORAI, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

Upon good cause shown, IT IS HEREBY ORDERED that the complaint in the above-captioned case, all documents relating thereto, and this Order be sealed and placed in the custody of the Clerk of Courts.

IT IS FURTHER ORDERED that upon the arrest of the  defendant named in the complaint, the complaint, all documents relating thereto, and this ORDER be unsealed.

IT IS FURTHER ORDERED that an Assistant United States Attorney of the Criminal Division of the United States Attorney's Office for the Northern District of Ohio may obtain, upon request and upon the arrest of the defendant, a certified copy of this complaint should the defendant be located in another judicial district and a certified copy of this complaint is needed for forwarding to that judicial district.

_David A. Ruiz_                    Feb 17, 2021

DAVID A. RUIZ
UNITED STATES MAGISTRATE JUDGE